# UNITED STATES DISTRICT COURT EASTERN DISTRICT

# OF CHATTANOOGA, TENNESSEE

DOUGLAS A. DYER

*Petitioner*

V.

MICHELLE FULGAM, in her official capacity

As Acting Manager of the Nashville, Tennessee

RRM, with responsibility and oversee of Chattanooga,

Tennessee Halfway House

*Respondent*

Civ. A. No. 1:21-CV-104

Judges Atchley / Lee

## VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS

## UNDER 28 U.S.C. 2241

FILED

MAY 14 2021

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

Douglas A. Dyer #52293-074

179 Callaway Court

Chattanooga, Tn. 37421

423-661-1729  dougdyer11@gmail.com

Michelle Fulgam, Acting Manager, Nashville RRM

Residential Reentry Office

400 State St., Ste. 800

Kansas City, KS 66101

913-551-1139

Petitioner Douglas Dyer, pro se, respectfully submits this Verified Petition for a Writ of Habeas Corpus, pursuant to 28 USC. 2241, along with the accompanying documents.

## PRELIMINARY STATEMENT

1.    I, Douglas Dyer am presently on Home Confinement, but under the law I should be released on July 19, 2021. Sentenced to five years in prison in 2017, I have been a model prisoner, and have taken advantage of the educational, rehabilitation, and anti-recidivism programming opportunities that the Bureau of Prisons ("BOP") provided me.

2.    Congress, in passing the historic First Step Act, provided prisoners committed to avoiding recidivism the ability to earn early release by such efforts. I completed qualified programming and productive activities during my sentence that, under the First Step Act, earned me time credits, known as Earned Time Credits.

3.    Per the Act, I am to receive 15 days of Earned Time Credit for every 30 days of anti-recidivism programming or productive activities completed. Earned Time Credits are required by the Act to be applied to the time I am eligible for accelerating the date on which my period of supervised release begins.

4.    I have accumulated 229 days of Earned Time Credits, enough to have earned my release from Home Confinement on July 19, 2021. The BOP has refused to credit me with any of my Earned Time Credit. In fact, as far as I can tell they have failed to even attempt to calculate the amount of Earned Time Credit that I am due.

5. I have made multiple efforts to have my Earned Time Credit applied, both with my case managers at FMC Lexington and with the RRC in Chattanooga, including via contact to the BOP

*I*

Sentence Computation in Grand Prairie, Texas. At every turn, my efforts were either rejected or ignored.

6. In refusing to provide me with the credit that I have earned, the BOP is unlawfully frustrating the First Step Act and the express direction of Congress.

7. Accordingly, I now seek the help of this Court via writ of habeas corpus, the so-called "Great Writ," to obtain the proper release date from prison that I earned under the First Step Act, that BOP has illegally refused me, and to which I have a legal right to under the Constitution and the laws of the United States.

## THE PARTIES

8. Petitioner, Douglas A Dyer, is a sixty-one year old male formerly incarcerated at Lexington FMC in Lexington, Kentucky ("Lexington FMC"). His prisoner identification number is 52293-074. Currently on Home Confinement.

9. Respondent Michelle Fulgam is the Manager of the Nashville, Tennessee RRM that is responsible for The Halfway House, for Chattanooga, Tennessee and is being sued in her official capacity. Respondent is in charge of the Chattanooga, Tennessee Halfway House that is monitoring my Home Confinement.

## JURISDICTION AND VENUE

10. Petitioner brings this action pursuant to 28 USC. 2241 for relief from unlawful detention that violates my rights under the U.S. Constitution, including my Fifth Amendment rights.

11. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 2241 (habeas corpus), 28 U.S.C 1651 (All writs Act), Amend. V of the U.S.

2

Constitution, and 28 US.C. 1331 (federal question).

12. Venue is proper in the Eastern District of Tennessee pursuant to 28

U.S.C. 2241(d) because Petitioner is in custody in this judicial district and venue. Venue is also

proper pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events and omissions

giving rise to these claims occurred in this district.

## BACKGROUND

A.      My Sentence and Time in Custody

13. On September 29, 2017 Judge Travis McDonough

of the United States District Court for the Eastern District of Tennessee sentenced Me to 60

months in prison, with an additional term of 3 years supervised release. This sentence was

imposed as a result of a plea agreement with the Government.

14. I began serving my sentence on December 1, 2017. My initial projected release date

is March 4, 2022, and my elderly offender date was March 31, 2021.

15. I have served as a model prisoner, enthusiastically engaging in every opportunity to

better myself. I have taken advantage of the various classes offered by the BOP, assigned,

directed and encouraged by my Case Manager at Lexington FMC, including serving an

apprenticeship as a Dental Assistant, in the customer service area of UNICOR as the senior

employee in the Waiver department, worked in Food Services and studied for and passed the

national exam with "The American Society for Quality" ("ASQ") as a Certified Quality

Improvement Associate (certification #14827). I have completed classes in Self-

Improvement, Non-Residential Drug Abuse program, health-related classes, been an

instructor in Health Core, coached several Prison softball teams, attended church services,

3

organized Bible studies as well as completed several various general education classes, such as history, finance, and Occupational Therapy. Also completed the comprehensive BOP Threshold Program that prepares inmates for life after Prison.

16. UNICOR is a prison industry and Lexington FMC serves as the customer service hub for the entire BOP. I was the senior inmate employee in the Waiver Department and worked with suppliers and vendors both in the BOP and outside Government Agencies. I was promoted and given pay raises and bonuses for extraordinary work. I was a full-time employee and worked in UNICOR for 147 days from September of 2019 through March of 2020. UNICOR has been shown to decrease recidivism. A BOP study, the Post-Release Employment Project, found that prisoners who participated in UNICOR "were 24% less likely to revert to criminal behavior as much as 12 years following release and 14% more likely to be gainfully employed following release from prison." Id Prisoners who participated in UNICOR "were also less likely to engage in prison misconduct while still incarcerated." Id. These anti-recidivist effects were increased for minority prisoners.

17. In addition to classes that I completed prior to December 21, 2018 (date of enactment of the First Step Act and the date that federal prisoners can begin to **earn** Time Credits) I completed the following classes, jobs and productive activities("PA"): (completed on or after 12/21/18)

| CLASS, JOB or PA | DAYS OF PROGRAMMING |
|---|---|
| UNICOR | 147 |
| Food Services | 61 |
| Non-Residential Drug Abuse | 8 |

*4*

| | |
|---|---|
| BOP Threshold Re-Entry Program | 16 |
| Positive Attitude and Self-Esteem | 10 |
| Resume and Interview Skills | 7 |
| AARP Finance over 50 years old | 5 |
| Health and Nutrition | 1 |
| Money Smart | 10 |
| Occupational Therapy "A Matter of Balance" | 9 |
| Instructor, Health Core Topic | 32 |
| ASQ Certified Quality Improvement Certification Class | 14 |
| ASQ Certification test (passed) | 1 |
| ACE Forex Trading Class | 8 |
| ACE United States Presidency | 8 |
| ACE World War I | 8 |
| Christian Non-denominational services (usher) | 74 |
| The History of the Church | 20 |
| Martin Luther Catechism Phase I | 20 |

**TOTAL DAYS of programming, work and PA's**          **459**

The First Step Act and Earned Time Credit

18. The First Step Act, Pub. L. No. 115-391, 132 Stat 5194 (codified as amended in scattered sections of 18 U.S.C. and 34 U.S.C.), was enacted by Congress on December 21, 2018.



5

It was engineered to reduce prison overcrowding by identifying individuals with a low risk for

recidivism and providing them the opportunity to access additional privileges or further reduce

their sentences by engaging in certain beneficial activities. 18 U.S.C.        1361, 1362(a)(1)-(8),

1365(3),

19. The First Step Act's legislative history reflects that Congress intended that it give

"prisoners incentives to earn skills in prison so that they can be productive members of society

after they have paid their debt." Senator Blumenthal (CT). "Bipartisanship." Congressional

Record 164: 199 (Dec. 18, 2018) p. S7745. "Under this legislation, low-risk offenders will be

able to earn credit by completing anti-recidivism programs that help better prepare them for life

after prison." Senator Menendez (NJ). "First Step Act." Congressional Record 164: 199 (Dec.

18, 2018)

page S7752. "We know that when prisoners are equipped with the right tools and resources, they

are better able to reintegrate into society and avoid old behaviors that could result in winding up

back behind bars. That is not only good for them, it is good for their families and good for their

acceptance into society." Former Attorney General William Barr stated that…" the First Step Act
provides

."inmates [with] even greater incentive to participate in evidence-based programs that prepare

them for productive lives after incarceration." Department of Justice Announces Enhancements

to the Risk Assessment System and Updates on First Step Act Implementation, Department of

Justice       Office       of       Public       Affairs,       January       15,       2020,

https://www.justice.gov/opa/pr/departmentjustice-announces-enhancements-risk-assessment-

system-and-updates-first-step-act. He noted that "this is what Congress intended with this

6

bipartisan bill." Id. "The First Step Act is an important reform to our criminal justice system, and the [DOJ] is committed to implementing the Act fully and fairly." Id.

20. Among the various incentives included in the First Step Act are credits colloquially known as "Earned Time Credit." See 18 U.S.C. 3632(d)(4). These are incentives earned by prisoners as a result of their successful participation in either evidence-based recidivism reduction ("EBRR") programming or productive activities, each of which is defined in the Act. They are applied "in addition to any other rewards or incentives for which a prisoner may be eligible." 18

U.S.C. § 3632(d)(6)

21. The Act defines an EBRR program as "either a group or individual activity" that: (A) "has been shown by empirical evidence to reduce recidivism" or is likely to be effective in doing so; or (B) "is designed to help prisoners succeed in their communities upon release from prison. 18 U.S.C 3635(3). EBRR Programs may include activities such as "academic classes," "substance abuse treatment," "vocational training," "religious services" or "a prison job, including through a prison work program." Id.

22. The First Step Act expressly states that prisoners may earn time credits for EBRR programs completed on or after December 21, 2018, the date of enactment of the Act. 18 USC 3632(d)(4)(B)

7

"Productive activity" is defined by the Act as "either a group or individual activity that is designed to allow prisoners determined as having a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating. . ." 18 U.S.C. 3635(5).

23. The Department of Justice ("DOJ") has issued guidance describing specific EBRR programs and productive activities that are entitled to Earned Time Credit upon completion.

24. All prisoners not subject to deportation are eligible for incentives and rewards for completed programming and productive activities, including Earned Time Credit, provided that they were not convicted of one of a list of enumerated offenses contained in 18 U.S:C. 3632(d)(4)(D)(i)-(lxviii). Prohibitive crimes include, inter alia, those relating to:

drive by shootings; chemical weapons; genocide; sexual abuse, and terrorism. See 18, US,C. 2. §§ 3632(d)(4)(D)(iii),(xi), (xxiv), (xxxvii), (xlvii);3632(d)(4)(E)(E)

25. An eligible prisoner "shall earn 10 days of time credits for every 30 days of successful participation in [EBRR] programming or productive activities. "

18 U.S.C. 3632(d)(4)(A). An eligible prisoner who is "determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities" for a total of 15 days of Earned Time Credit for every 30 days of successful programming. Id. [1]

---

[1] The recidivism assessment process is set forth at 18 U.S.C. 3632(a).

$8$

26. Pursuant to the Act, Earned Time Credit "shall be applied toward prerelease custody or supervised release." 18 U.S.C. 3632(d)(4)(C). If part of the prisoner's sentence includes a term of supervised release, the Director of the [BOP] may transfer the prisoner to begin any such term of supervised release at any earlier date, not to exceed 12 months, based on the application of Earned Time credits under section 3632. 18 U.S.C. § 3624(g)(3)

27. On or around December 3, 2019 I received from my case manager my PATTERN score and authorization that my PATTERN score made me Eligible for the First Step Act and a recidivism level of Minimum. On or around April 11, 2020 my case manager gave me a second evaluation in anticipation of me being sent to Home Confinement under the CARES Act and my score was still "Eligible" and "Minimum", thus triggering the additional 5 days of Time Credits for every 30 days of successful participation in Evidence-Based Recidivism Programs and Productive Activities. I was now eligible for 15 days of Time Credits for every 30 days of programming and participation.

28. All of these programs, a total of 459 days of programming, were completed on or after December 21, 2018, the date on which the First Step Act was enacted, and thus qualify for Earned Time Credit under the Act.

29. My 459 days of successful programming equals 15.30 months (30-day periods) of credit. Applying 15 days of Earned Time Credit for each 30-day period of successful programming, as required by the Act, results in a total of 229 days of Earned Time Credit that I earned.

9

30. Based on the Earned Time Credits my release date should be July 19, 2021 rather than March 3, 2022.

**The First Step Act Requires that the BOP Credit Prisoners for Programming That Was Successfully Completed On or After December 21, 2018**

31. The BOP may argue that I am disqualified from receiving Earned Time Credit for the "educational, vocational, religious and health-related programs" that I completed before January 15, 2020. That potential argument is directly contradicted by the plain language of the First Step Act and the recent ruling of a district court See Hare v Ortiz, No. CR 18-588-1(RMB), 2021 WL 391280 (D.N.J. Feb. 4 2021)

32. Under 18 USC 3632(d)(4)(B), prisoners are entitled to earn time credits for EBRRs that they "successfully completed on or after the date of enactment of this subchapter." Id. The date of enactment of the relevant subchapter was December 21, 2018. Id see Hare, 2021 WL 391280, at *6; Pet. Paragraph 29. It is undisputable that I completed all of the programs for which I seek Earned Time Credits on or after that date. It is also undisputable that I was eligible for such credits. Accordingly, I have a legal right to receive Earned Time Credit for each and every such program, job, PA or faith-based program.

33. That is exactly what the Hare Court held. In that habeas corpus case, the BOP argued that the Court should "interpret the date of enactment of this subchapter" in 3632(d)(4)(B)(i) to mean January 15, 2020" Hare, 2021 WL 391280, at *6 se 85 Fed. Reg. 75268-01 (to be codified at 28 C.F.R. 523.42(d)(1). The Court made short work of that argument, noting the "ordinary meaning of the term" clearly indicated December 21, 2018, and the BOP used that as the date of

*10*

enactment when calculating other dates within the Act. Id. *6-7. It concluded that "there is no ambiguity here. As a result, if Petitioner successfully completed an EBRR program, PA or faith-based program on or after December 21, 2018 , he is entitled to earn Time Credits" Id. At *7 . Similarly, in Goodman v Ortiz, the court credited petitioner with Earned Time Credit for programming dated from November 6, 2019. Id. No. CV 20-7582 (RMB) , 2020 WL 5015613, at *6 (D.N.J. Aug 25, 2020); see id. ECF No. 1-2 at paragraph 4.3 (seeking Earned Time Credit for activities that petitioner participated in since November 6, 2019) The Court should require the BOP to adhere to the plain language of the First Step Act and credit me with 229 days of Earned Time Credit that I earned for taking these BOP-approved and provided educational, vocational, health-related and faith-based programs.

## The Act's Plain Language Entitles Qualifying Prisoners to RECEIVE Credit Beginning January 15, 2020, Not January 15,2022

34.Section 3621(h)(1) states that on January 15, 2020, 180 days after the Attorney General completed and released the System, the BOP was to "implement and complete an initial risk and needs assessment for each prisoner" and "begin to assign prisoners to appropriate [Programs]." 18 U.S.C. § 3621(h)(1)(A). The BOP also was required to "begin to expand the effective [Programs] and productive activities it offers and add any new [Programs] and productive activities necessary to effectively implement the [System]." 18 U.S.C. § 3621(h)(1)(B). Finally, the BOP was also to "begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, *while prisoners are participating in and completing the effective [Programs] and productive activities*." 18 U.S.C. § 3621(h)(1)(C) (emphasis added). These requirements all align with

/ /

the plain language of the phase-in provision, which immediately follows this language and

which requires that Programming actively commence on January 15,

2020 and gradually expand to apply to "all" prisoners by the end of the phase-in period on

January,15, 2022. The 2022 date is thus *not* the date on which the Programming "takes

effect," rather, it is the end date by which the BOP must have expanded Programming to

cover all inmates. Section 3621(h)(2) then plainly states that the two year "phase-in"

period is the outer limit on when BOP must make Programming and the resulting credits

available to "all" prisoners. 18 U.S.C. § 3621(h)(2).[2] The section is clear that while the

phase-in period is to be used to make the program available for "every" and "all" prisoners,

18 U.S.C. § 3621(h)(2)(A), certain prisoners, such as Me, already have been permitted and

indeed are expected to "participate in and complete Programs and productive activities."

18 U.S.C. § 3621(h)(2)(B). There is no dispute that this is exactly what I did, in full

compliance with the Act. The plain language of the statute expressly and unambiguously

expects prisoners to participate in Programs and activities and to accumulate credits as a

result. The statute's requirement that the BOP extend the program by January 15, 2022 to

cover *all* prisoners is to police the BOP's compliance, not to disincentivize participants.

Respondent may claim that the phase-in means that the provision "has not yet taken effect"

is contrary to the statute's unambiguous language and should be rejected.

---

[2] (2) Phase-in.--In order to carry out paragraph (1), so that *every* prisoner has the opportunity to participate in and complete the type and amount of [Programs] or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the [BOP] shall--

(A) provide such [Programs] and productive activities *for all prisoners* before the date that is 2 years after the date on which the [BOP] completes a risk and needs assessment for each prisoner under paragraph (1)(A); and

(B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, *while prisoners are participating in and completing [Programs] and productive activities.* (emphasis added).

*12*

35.More fundamentally, as forth in my Petition, I have spent 459 days participating in

evidence-based recidivism programming("EBRR"), prison jobs, Productive

Activities ("PA"), classes and faith-based programming. All of these have been

encouraged, recommended and discussed with my Case Manager, Ms. Mitchell

on multiple occasions, that included "team" meetings and scheduled meetings

with Ms. Mitchell. Some of these programs and classes I signed up for and then

the BOP determined what prisoners would be selected to participate and what

prisoners would not be selected. All of these were completed on or after the

enactment of the First Step Act on December 21, 2018. Under the First Step Act

my successful participation in the activities qualified me for the 229 days of

Earned Time Credit. If the BOP argues that those efforts only advanced me a

shorter period, the BOP's calculation is flatly wrong under the law.


36.If the BOP arrives at some heavily discounted number by refusing to apply the

plain language of the First Step Act; and instead relies on interpretations of the

statute that are starkly inconsistent with it, and use draft regulations that have

not been enacted, the BOP is again wrong under the law. Especially if these

interpretations and draft regulations employ a number of devices-none of which

are contemplated by the Act-that would drastically reduce the amount of credit

that prisoners like myself can earn to reduce our time in prison.

37.     If the BOP purports to cap the maximum amount of time awarded for

successful completion of various programs, this cap would not be based in the

statute or even in the proposed regulations. It would simply be made up by the

BOP, and it is antithetical to the First Step Act in letter and spirit. If the BOP

/ 3

attempted this, it would have a drastic effect on my and, indeed, scores of similarly situated prisoners, as it would limit Earned Time Credits we have earned for programs

like UNICOR and the Threshold program, despite the long-term commitment that each of these immersive programs require and the long-term skills that each confer. In my case where I participated in a full-time seven and one-half month program I should be awarded full credit for that successful participation.

38.     If the BOP is contemplating their "own" definition of what a "day" of programming is, the BOP is again not following the First Step ACT in law or spirit. The BOP's proposed EBRR Manual is flawed as it does not include ACE classes, jobs that teach inmates skills, restricts freedom of religion and limits the amount of programming days an inmate can earn. As an example, if an inmate who works in UNICOR and meets his Earned Time Credit early in his time on the job, what incentive would he have to continue this intensive and time-consuming program? This is clearly what Congress has been admonishing the BOP about during hearings where the Director of the BOP testifies, like in the April 15, 2021 hearing in the Senate Judiciary Committee. If the DOJ's EBRR guidance list duration of credit in *"hours"*, the statute specifically states that credit is earned in **days.** *See* 18 USC 3632(d)(4)(A)(i)-(ii) ( A prisoner shall earn 10 **days** of time credits for every thirty (30) days of successful participation. . .A prisoner. . . shall earn an additional 5 **days** of time credits for every 30 days of successful participation in programming or productive activities.") It is well established that "agencies exercise

discretion only in the interstices created by statutory silence or ambiguity; they must always give effect to the unambiguously expressed intent of Congress." Util.

14

Air. Regulatory Grp. v E.P.A.. 573 U.S. 302, 326(2014). Accordingly, the District Court for the District of New Jersey recently credited an individual with Earned Time Credit calculated in days. *See* Goodman v. Ortiz, Civ. 20-7582(RMB), 2020 U.S. Dist. LEXIS 153874, at *15 ( D.N.J. Aug. 25, 2020).

39. under the application of the Act, makes transfer to Probation and Supervised Release the Highest application of earned time credits. This application is my due process protected liberty interest in rights granted by the federal law evidenced by the Act. In addition, 3632(d) the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible. ( i.e. CARES Act and Elderly Offender status)

40. The Act establishes the unambiguous time table for FB0P actions:

Section 102 of The Act states:

Implementation of System and Recommendations by the Bureau of Prisons. "§3631(h)(1). Not later than 180 days after the Attorney General completes and releases the Risk and Needs Assessment System [January 15, 2020] the Director of the Bureau of Prisons shall…. (B) begin to expand the effective Evidenced-Based Recidivism Reduction Programming or Productive Activities it offers…..necessary to effectively implement the "System" The Act made clear that the January 15, 2020, date is when the "System" must be implemented. The effective date of The Act was even earlier than the January 15, 2020 date, namely: July 19, 2019. The statute also made clear that the Date of Enactment (when inmates could begin EARNING Time Credits was December 21, 2018) And this fact is clear and unambiguous in The Act: "Sec. 102· §3631(b)(2). The Amendment made by this

*15*

Subsection shall take effect beginning on the date that the Attorney General completes and releases the Risk and Needs Assessment System [July 19, 2019] under Subchapter D of Chapter 229 of Title 18, United States Code, as added by Section 101(a) of this Act.    To further support the aforementioned date of January 15, 2020, as the

mandatory implementation date for the earned time credits,

a memo- dated- January 15, 2020, purporting to be from the

"Office of Public Affairs, "states:

https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act

41. My eligibility was established and confirmed by Case Manager Ms. Mitchell's handwritten assessment determination, "FSA Eligible."

WHEREFORE, as my qualification for and participation in FBOP programing and educational activities particularly designated and assigned me to obtain diminution credits by Case Manager Ms. Mitchell herself and calculated under the First State Act. named Immediate Custodian's herein refusal to calculate my credits, unlawfully restrains me of my personal federal civil right of liberty under the 14th and 15th

Amendments due process and equal protection guarantee of the Federal Constitution for my release date of July 19, 2021 instead of my

projected release date of March 4, 2022.

**There is already a precedent to this awarding of my First Step Act Time Credits:**

42. <u>Goodman v. Ortiz</u> (1:20-cv-07582)

On August 25, 2020 United States District Judge Renee Marie Bumb

*16*

" III. CONCLUSION The BOP's position that a prisoner can complete the PATTERN program before January 15, 2022 with no benefit to the prisoner is contrary to the statutory language, not to mention the unfairness of such a result. Therefore, the Court concludes that Petitioner is entitled to habeas relief. The Court will direct the BOP to immediately apply Petitioner's Earned Time credit of 120 days in an accompanying Order."

The entire Order and opinion can be read at https://www.courtlistener.com/recap/gov.uscourts.njd.437697/gov.uscourts.njd.437697.12.0.pdf

## B. **Exhaustion of Administrative Remedies**

43. The parties acknowledge that there is an administrative remedy exhaustion Requirement applicable to petitions for a writ of habeas corpus under 28 USC 2241, but there are exceptions to the requirement. See Cerverizzo v Yost, 380 F. App'x 115, 116 (3d Circuit 2010) (citing Woodall v Fed. Bureau of Prisons, 432 F.3d 235, 239 n. 2 (3d Cir. 1986) ; Gambino v Morriss, 134 F. 3d 156, 171 (3d Cir. 1998) ( Roth, J., concurring).

44. This case, however, presents a narrow dispute of statutory construction which is exempt from exhaustion requirement. See Coleman v U.S. Parole Comm'n, 644 F. App'x 159, 162 (3d Cir. 2016) ( "exhaustion is not required with regard to claims which turn only on statutory construction") (citing Harris v Martin, 792 F. 2d 52, 54 n. 2 (3d Cir. 1986) ) . Morever, because the Court finds habeas relief should be granted, exhaustion is excused. See Gambino, 134 F.3d at 171 ("exhaustion is not required when petitioner demonstrates that it is futile")

45. Out of an abundance of caution, I sent my request to :

1) Jeremy Clark, my case manager at Chattanooga Halfway House

2) RRM Nashville, Tennessee

3) "Team Bravo" at the BOP Sentence Computation Center in Grand Prairie, Texas (at instructions from Jeremy Clark)

4) Michelle Fulgam, Acting-Manager Nashville, Tennessee RRM with supervise responsibility of Chattanooga Halfway House

5) Susie Morseman, Mid-Atlantic Regional Office of the BOP

6) Office of General Counsel BOP, 320 First St. NW Washington, DC 20534

## C. Petition is ripe and other statements

46.   The BOP may argue that the Petition is not ripe because according to it's calculation, I'm not currently eligible for release. This is incorrect as a matter of law. First, I will indeed be eligible for accelerated release on July 19, 2021, as set forth in this Petition. But in any event, my Petition challenges the duration of my sentence and I seek a speedier release from prison, an area that the Supreme Court has held lies at the "core of habeas corpus". Preiser v Rodriguez, 411 US 475,487 (1973). My Petition is ripe and the Court may therefore proceed with the question of how much Earned Time Credit I have accrued.

47.   This is so because it challenges the duration of my confinement- an area that

lies "within the core of habeas corpus", and one that courts have repeatedly found to be valid grounds for a petition. See Brown v Gov of New Jersey, 432 F. App'x 45, 46 (3rd Cir 2011) (quoting Wilkinson v Dotson, 544 US 74, 79 (2005) and Preiser, 411 US at 487). "It is well established that habeas corpus is the exclusive avenue by which a person in custody may challenge the fact or duration of a conviction or sentence." Abdel-Whab v United States, 175 F. App'x 528 (3rd Cir.

18

2006) Such a claim is ripe and remains exclusively the subject of a habeas petition when a prisoner "seeks immediate or speedier release" Heck v Humphrey, 512 US 477, 481 (1944); see Preiser, 411 US at 498 (claim that seeks "immediate or a speedier release" from confinement is "the heart of habeas corpus").

48.    Preiser directly addresses the issue of ripeness in the context of the accumulation and calculation of time credits. In Preiser, the Supreme Court addressed a case in which prisoners "alleged that the deprivation of their good-conduct-time credits was causing or would cause them to be in illegal physical confinement, i. e., that once their conditional-release date had passed, any further detention of them in prison was unlawful". Id, at 487. The Supreme Court noted that although these particular prisoners would have gained "immediate release" habeas corpus "would have been their appropriate remedy" even if requested release only served to shorten the length of their actual confinement in prison." Id. The Supreme Court explained that "recent cases have established that habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases " Id. (citing cases). The Supreme Court concluded:

> "So, even if restoration of respondents' good-time credits had merely
> Shortened the length of their confinement, rather than required
> Immediate discharge from that confinement, their suits would still
> Have been within the core of habeas corpus in attacking the very
> Duration of their physical confinement itself. "It is beyond doubt
> Then, that the respondents could have sought and obtained fully
> Effective relief through federal habeas corpus proceedings."

19

It is undisputed that my Petition challenges the duration of my confinement.

Whether I have a legal right to "immediate" or "speedier" release is of no consequence

Either way. My Petition is ripe.

    D.

49.    More fundamentally, and as set forth in my Petition, I have spent 459 days participating in evidence-based recidivism reduction (EBRR) programming or productive activities (PA) since enactment of the First Step Act on or after December 21, 2018. Under the First Step Act (the "Act" or the "FSA"), my successful participation in these activities qualifies me to 229 days of Earned Time Credit.

50.  The BOP may argue that the FSA would allow the BOP to award credit only for programming completed after January 15, 2020. This would directly contradict the plain language of the First Step Act, which flatly states that prisoners can earn credit for programming completed on or after the First Step Act's enactment date, December 21, 2018.

51.    The BOP may argue that the Court should defer to its interpretations and proposed regulations in accordance with <u>Chevron, USA, Inc v Natural Resources Defense Council, Inc</u>. 467 US 837,843 (1984). But that high level of deference is unwarranted under the <u>Chevron </u>because the BOP's interpretations and proposed regulations will contradict, undermine and ignore both the plain language of the statute and Congress's oft-stated intent in enacting the FSA: that is, to maximize incentives for prisoners to receive the tools they need to become more productive members of society upon their release.

52.    On April 15, 2021 members of the Senate Judiciary Committee reiterated

2 0

this intent to BOP Director Michael Carvajal during oversight hearing. The Committee's chairman also expressly criticized the BOP's proposed regulations for failing to comply with this intent. He (The Chairman) was correct, and the BOP's positions merit no deference. As Senator Grassley noted during the April 15, 2021 hearing, in addressing the failure of the BOP to award the Earned Time Credits, "the pandemic hijacked many of the implementation efforts, but the BOP must do better and follow the **law** without excuse. "

53. The BOP would be simply incorrect as a matter of law. Their proposed regulations such as those that the BOP claims do not carry the force of law- a fact the BOP freely admits- and therefore not entitled to Chevron deference. The law is clear that a proposed regulation "does not represent an agency's considered interpretation of its statute". Commodity Futures Trading Comm'n v Schor, 478 US 833, 845 (1986). As such it is not entitled to any deference, Chevron or otherwise, by the Court. In addition, these particular proposed regulations lack any persuasive power and are of no use to the Court in interpreting and applying the statute. When the law is correctly applied to the undisputed facts, the result is that I should be released to supervised release on July 19, 2021 by accelerating the date on which my period of supervised release begins.

54. For all of the reasons and law explained above, I have a legal right to have my Earned Time Credits applied to my sentence, and be released to supervised release on July 19, 2021.

21

## CLAIM FOR RELIEF

### Issuance of a Writ of Habeas Corpus

55. I have earned 239 days of Earned Time Credit under the First Step Act.

56. Proper application of this Earned Time Credit requires the BOP to release me to supervised release on July 19, 2021.

57. BOP has illegally and failed to apply, or even calculate, my Earned Time Credit, and as a result my date for supervised release is incorrect and risks me being improperly and illegally incarcerated after July 19, 2021.

58. This failure to apply my Earned Time Credit violates my rights under the Fifth Amendment to the Constitution and the First Step Act.

59. Accordingly, the Court should promptly issue a writ of habeas corpus, pursuant to 28 USC 2243, releasing me to supervised release on July 19, 2021

## PRAYER FOR RELIEF

WHEREFORE Petitioner requests the Court grant the following relief:

i.      Issue a writ of habeas corpus to Respondent to awarding me 229 days of Earned Time Credit and set my release date to supervised released on July 19, 2021.

Respectfully Submitted,

Douglas A. Dyer        May 12, 2021

22

# SUPPORTING DOCUMENTS

Affidavit sent to :

Michelle Fulgum, Acting Manager, Nashville RRC

RRM Nashville Residential Reentry Office

"Team Bravo" , BOP Sentencing Computation Center, Grand Prairie, Tx

Jeremy Clark, Case Manager, Chattanooga Halfway House

Susie Morseman, Mid-Atlantic Regional Office of the BOP

Office of General Counsel BOP, Washington, DC

(proof of delivery to each)

Copy of affidavit sent

Certificates of completed programs, EBRRP, PA

December 3, 2019 dated PATTERN eligibility sheet

**Number of pages 36 (including "supporting documents" page)**

 Gmail　　　　　　　　　　　　　　　　**Doug Dyer <dougdyer11@gmail.com>**

---

## First Step Time Credits
2 messages

---

**Doug Dyer <dougdyer11@gmail.com>**　　　　　　　　　　　Thu, Apr 22, 2021 at 2:11 PM
To: Jeremy Clark <jeremy.clark@uss.salvationarmy.org>

Jeremy, Since you are the only contact person I have with the BOP, i have sent this to you. As I mentioned, I called Grand Parie ( sentence computation) and they said They could not talk to me and referred me to call my Counselor.

See attached and let me know who you think it should go to.

Call me if you have any questions

Doug Dyer

📄 **Affidavit of Douglas A.docx**
23K

---

**Jeremy Clark <Jeremy.Clark@uss.salvationarmy.org>**　　　　　Thu, Apr 22, 2021 at 2:16 PM
To: Doug Dyer <dougdyer11@gmail.com>

I don't understand your question to me? Call me if you like.

[Quoted text hidden]

To: Michelle Fulgum, Acting Manager, Nashville RRC

913-551-1076 (fax)


From: Douglas A. Dyer  #52293-074

Phone 423-661-1729


PAGES 26 (including cover)

Sent   4/30/21.

```
TIME  : 04/30/2021 15:20
NAME  : BACON PRODUCTS CORP
FAX   : 4238922065
TEL   : 4238920414
SER.# : U63274J4J780442
```

| NO. | DATE | TIME | FAX NO./NAME | DURATION | PAGE(S) | RESULT | COMMENT | |
|---|---|---|---|---|---|---|---|---|
| | 03/24 | 08:45 | | 33 | 01 | OK | RX | ECM |
| | 03/24 | 13:11 | 888 412 1475 | 22 | 01 | OK | RX | ECM |
| | 03/25 | 08:43 | | 02:34 | 06 | OK | RX | ECM |
| | 03/25 | 08:46 | | 02:34 | 06 | OK | RX | ECM |
| | 03/26 | 08:43 | | 03:29 | 09 | OK | RX | ECM |
| | 03/26 | 08:47 | | 03:41 | 09 | OK | RX | ECM |
| | 03/29 | 07:52 | 8045616247 | 40 | 02 | OK | RX | ECM |
| | 03/30 | 07:21 | 8045616247 | 02:12 | 07 | OK | RX | |
| | 03/30 | 10:26 | | 31 | 00 | NG | RX | |
| | 03/30 | 10:30 | 844  361 5780 | 26 | 01 | OK | RX | ECM |
| | 03/31 | 15:50 | | 19 | 01 | OK | RX | ECM |
| #037 | 04/01 | 07:18 | 8045616247 | 40 | 02 | OK | TX | ECM |
| | 04/01 | 15:08 | 14236297033 | 22 | 02 | OK | RX | |
| | 04/04 | 11:01 | 8045616247 | 02:21 | 07 | OK | RX | |
| | 04/05 | 10:57 | 19 | 24 | 01 | OK | RX | |
| | 04/05 | 15:19 | 8045616247 | 01:35 | 05 | OK | RX | |
| | 04/06 | 10:59 | | 01:05 | 02 | OK | RX | |
| | 04/06 | 11:01 | | 01:05 | 02 | OK | RX | |
| | 04/07 | 07:12 | 8045616247 | 41 | 02 | OK | RX | |
| | 04/08 | 06:59 | 8045616247 | 40 | 02 | OK | RX | |
| | 04/11 | 07:55 | 8045616247 | 41 | 02 | OK | RX | |
| | 04/12 | 10:27 | 8775753187 | 32 | 01 | OK | RX | |
| | 04/12 | 15:49 | 8045616247 | 01:13 | 04 | OK | RX | |
| | 04/13 | 11:40 | 754 892 7103 | 30 | 01 | OK | RX | |
| | 04/13 | 14:29 | | 27 | 01 | OK | RX | |
| | 04/15 | 07:32 | 8045616247 | 39 | 02 | OK | RX | |
| | 04/19 | 07:38 | 8045616247 | 40 | 02 | OK | RX | |
| | 04/19 | 10:47 | 4053500514 | 47 | 02 | OK | RX | ECM |
| #038 | 04/20 | 11:05 | 14053508514 | 45 | 01 | OK | TX | ECM |
| | 04/21 | 09:20 | | 03:40 | 09 | OK | RX | |
| | 04/21 | 09:24 | | 03:40 | 09 | OK | RX | ECM |
| | 04/22 | 15:35 | 8045616247 | 01:31 | 03 | OK | RX | |
| | 04/25 | 15:49 | 8045616247 | 40 | 02 | OK | RX | ECM |
| | 04/26 | 10:15 | | 19 | 01 | OK | RX | |
| | 04/27 | 10:55 | | 59 | 01 | OK | RX | |
| | 04/27 | 11:24 | 888 412 1475 | 29 | 01 | OK | RX | ECM |
| #039 | 04/28 | 10:38 | 12524431323 | 30 | 02 | OK | TX | ECM |
| | 04/29 | 11:04 | | 13 | 01 | OK | RX | ECM |
| #040 | 04/29 | 14:01 | 13047996567 | 24 | 02 | OK | TX | ECM |
| #043 | 04/30 | 15:00 | 19135511076 | 05:30 | 26 | OK | TX | ECM |

```
BUSY : BUSY/NO RESPONSE
NG   : POOR LINE CONDITION / OUT OF MEMORY
CV   : COVERPAGE
POL  : POLLING
RET  : RETRIEVAL
PC   : PC-FAX
```

*Michell Fulgum   Fax #*

To: RRM Nashville, Manager

   Residential Reentry Office

701 Broadway St. Suite 124

Nashville, Tn 37203


First Step Time Credits, Affidavit of Douglas A. Dyer   #52293-074


I am on Home Confinement via the CARES Act, although I also qualify for Elderly Offender status. I am 61 years old.


I presented this to my Counselor Jeremy Clark, with the BOP Salvation Army Halfway House in Chattanooga, Tennessee on April 22. 2021


Thank you

*D.D.*

Douglas A. Dyer
#52293-074
179 Callaway Ct.
Chattanooga, Tennessee 37421
423-661-1729

# USPS Tracking®

## Track Another Package  +

**Tracking Number:** EJ596377735US

Remove ✕

**Scheduled Delivery by**

# FRIDAY

# 30 APRIL 2021 ⓘ

## by

# 3:00pm ⓘ

Feedback

## ✓ Delivered

April 30, 2021 at 11:32 am
NASHVILLE, TN 37203

**Get Updates** ⌄

---

**Text & Email Updates**                                    ⌄

---

**Proof of Delivery**                                        ⌃

To request a Proof of Delivery email with full details including a delivery address, **sign in to your USPS.com® account.** ❯

For a Proof of Delivery email without a delivery address, provide your name and email address below.

*Indicates a required field

*First Name                                              M.I.

Case 1:21-cv-00104-TRM-SKL   Document 1   Filed 05/14/21   Page 29 of 60   PageID #: 29

To: BOP, Team Bravo

   346 Marine Forces Dr

   Grand Prairie, Texas 74051

First Step Time Credits, Affidavit of Douglas A. Dyer #522-93-074

I am on Home Confinement via the CARES Act, although I also qualify for Elderly Home Offender status.

I presented this to my Counselor, Jeremy Clark, with the Salvation Army Halfway House in Chattanooga, Tennessee on April 22, 2021

Was told to forward this to BOP Grand Prairie, Tx attention Team Bravo

Thank You

Douglas A. Dyer

179 Callaway Ct.

Chattanooga, Tennessee 37421

423-661-1729

 **UNITED STATES**
**POSTAL SERVICE**

April 27, 2021

972-352-4400

Dear douglas dyer:

The following is in response to your request for proof of delivery on your item with the tracking number:
**EJ65 0310 474U S**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | April 27, 2021, 11:34 am |
| **Location:** | GRAND PRAIRIE, TX 75051 |
| **Postal Product:** | Priority Mail Express 1-Day® |
| **Extra Services:** | Insured |
| | PO to Addressee |
| | Up to $100 insurance included |
| **Actual Recipient Name:** | D HEILMAN |

Note: Actual Recipient Name may vary if the intended recipient is not available at the time of delivery.

## Shipment Details

| | |
|---|---|
| **Weight:** | 6.0oz |

## Recipient Signature

Signature of Recipient: _(signature)_

Address of Recipient: _(handwritten address)_

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

Office of General Counsel

Room 924

Federal Bureau of Prisons

320 First Street N.W.

Washington, DC 20534


This will serve as my BP-11


Douglas A. Dyer inmate #52293-074

179 Callaway Ct.

Chattanooga, Tn. 37421

Phone 423-661-1729

Sent   5/3/21

 **UNITED STATES POSTAL SERVICE**

May 5, 2021

Dear douglas dyer:

The following is in response to your request for proof of delivery on your item with the tracking number:
**EJ70 7563 226U S**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | May 5, 2021, 11:59 am |
| **Location:** | WASHINGTON, DC 20534 |
| **Postal Product:** | Priority Mail Express 1-Day® |
| **Extra Services:** | Insured |
| | PO to Addressee |
| | Up to $100 insurance included |
| **Actual Recipient Name:** | D HILL |

Note: Actual Recipient Name may vary if the intended recipient is not available at the time of delivery.

## Shipment Details

| | |
|---|---|
| **Weight:** | 6.0oz |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: | *L. Hill* / *D. Hill* |
| Address of Recipient: | *20534* |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

Mid-Atlantic Regional Office    *Attn: Susie Morseman*

Staff

302 Sentinel Dr.

Suite 200

Annapolis Junct., MD 20701


This will serve as my BP-10

From: Douglas A Dyer inmate #52203-074

     179 Callaway Ct

     Chattanooga, TN 37421


*sent  5/3/21*


**UNITED STATES**
**POSTAL SERVICE**

May 4, 2021

Dear douglas dyer:

The following is in response to your request for proof of delivery on your item with the tracking number:
**EJ54 2722 643U S.**

### Item Details

| | |
|---|---|
| **Status:** | Delivered |
| **Status Date / Time:** | May 4, 2021, 11:56 am |
| **Location:** | ANNAPOLIS JUNCTION, MD 20701 |
| **Postal Product:** | Priority Mail Express 1-Day® |
| **Extra Services:** | Insured |
| | PO to Addressee |
| | Up to $100 insurance included |
| **Actual Recipient Name:** | C HUGAR |

Note: Actual Recipient Name may vary if the intended recipient is not available at the time of delivery.

### Shipment Details

| | |
|---|---|
| **Weight:** | 6.0oz |

### Recipient Signature

| | |
|---|---|
| Signature of Recipient: | *RXBn RRoo1CD79* 302 SENTINEL DR ANNAPOLIS JUNCTION, MD 20701 |
| Address of Recipient: | *Suite 200* |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

*Correctional Programs*

*Susie Monseman 301-317-3100*

*✳*

# Affidavit of Douglas A. Dyer

I, Douglas A. Dyer, being of sound mind and body, am competent to make this Affidavit and swear the following is true and correct from my personal knowledge, experience and memory and where I quote or reference or paraphrase another person; I believe that quote, reference or paraphrase to be correct and true to the best of my memory.

(1) "Enacted on December 21, 2018, the . First Step Act (FSA; hereinafter "The Act ") was the result of a bipartisan legislative effort to moderately overhaul the criminal justice system .. ; Congress aimed to .enhance public safety by improving the effectiveness and efficiency of the federal prison system with offender risk and needs assessment, individual risk reduction incentives and rewards, and risk and recidivism reduction . H R Rep . No . 115 -699 at 22 ( 2018 ) . " See United States v. Simmons, 375 F. Supp. 3d 379 (2nd _ Circuit, 2019). The Act authorized:

    (1.1) §3632(a). Not later than 210 days after the date of enactment of this Subchapter [July 19, 2019], the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act Qf 2018, shall develop and release publicly on the Department of Justice website, a Risk and Needs Assessment System, which shall be used to §3632(a)(1) Determine the recidivism risk of each prisoner as part of the intake process, ' and classify each prisoner as having a minimum; low, medium, or high risk of recidivism."

    (1.2) On 11-26-19, Federal Bureau of Prisons ("FBOP") via Case Manager Ms. Mitchell at Lexington FMC, conducted the initial Risk and Needs Assessment via the Prisoner (Me) Assessment Tool Targeting Estimated Risk and Need (PATTERN) tool, and I was determined to have a "MINIMUM" risk of recidivism. Therefore, I am in full compliance of the above subchapter.

(2) Next, Case Manager Ms. Mitchell completed The Act's determination and assignment of Evidence-Based Recidivism Reduction Programming of the Risk and Needs Assessment System. (2 .1) " §3632. Determine the type and amount of Evidence Based Recidivism Reduction Programming that is appropriate for each prisoner, and assign each prisoner to such programming accordingly "
(2.2) Ms. Mitchell, on multiple occasions met with me and told me to participate in what she called "All Programming" and said I was to participate in Adult Continuing Education (ACE) classes, Any and All Productive Activities, Faith-based classes and services, Non-Residential Drug Addiction Program, Prison jobs including UNICOR and all Evidence-based Recidivism Reduction Programming.

(3) Case Manager Ms. Mitchell informed me both on 11-26-19 and multiple meetings and "Team" that these assignments met "3635(3) requirements of the Act."
(3.1) "3635(3) "The term Evidence-Based Recidivism Reduction Programing means either a group or individual activity that :

(A) " has been shown by empirical evidence to reduce recidivism or is based on research indicating that its likely to be effective in reducing recidivism;

(B) is designed to help prisoners succeed in their communities upon release from prison; and

( C ) may include (iv) academic classes (vii) substance abuse treatment (viii) vocational training (ix) faith-based classes or services (xi) a prison job, including through a prison work program "

(3.2) Per Case Manager Ms. Mitchell's assignments I successfully participated and completed the following Academic (ACE) classes, Substance abuse classes, productive activities, EBRRP programs, faith-based classes and services, Prison jobs and UNICOR and assigned productive activities. ALL of these completed AFTER the date of enactment of the ACT December 21, 2018:

| PROGRAM | DAYS |
|---|---|
| UNICOR- customer service, waiver dept. | 147 |
| Prison Job- Cafeteria | 61 |
| Per 3635(3)(c)(xi) of the ACT and listed by the FBOP in its official publication On page 1 of evidence-based recidivism reduction programs and productive Activities | |
| Non-Residential Drug Abuse Program | 8 |
| Per 3635(3)(c) (vii) of the Act and page 1 of the FBOP publication | |
| BOP Threshold Re-Entry Program | 16 |
| Positive Attitude and Self-Esteem | 10 |
| Resume and Interviewing Skills | 7 |
| AARP Finance over 50 years old | 5 |
| Health and Nutrition | 1 |
| Money Smart | 10 |
| Occupational Therapy "A Matter of Balance" | 9 |
| Instructor Health Core Topic | 32 |
| ASQ Certified Quality Improvement Certification Class | 14 |
| ASQ Certification Test ( passed) | |
| All 10 above per 3635 (3)(c)(ii) and (viii) of the Act and page 1 of the FBOP Publication | |
| ACE Forex Trading Class | 8 |
| ACE United States Presidency | 8 |
| ACE World War I | 8 |
| All 3 above per 3635 (3)(c)(x) of the Act and page 4 of the FBOP Publication | |
| Religious Services | 74 |
| The History of the Church | 20 |
| Martin Luther Catechism Phase I | 20 |
| All 3 above per 3635(3)(c)(ix) of the Act | |

Total DAYS    458   of programming

(4) The Act provides at:

(4.1) " § 3632 ( d ) (4 ) ( A ) • A prisoner who completes Evidence-'Based Recidivism successfully Reduction Programming or Productive Activities, shall earn time credits as follows: (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in Evidence-Based Recidivism Reduction Programming or Productive Activities (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk of recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in Evidence-Based Recidivism Reducti6n Programming or Productive Activities.

(4.2) On approx. April 11, 2020 Ms. Mitchell completed a second consecutive PATTERN score in anticipation of my qualification for the CARES Act and determined again that my PATTERN score had me in the MINIMUM risk of recidivism category which should have triggered the " additional 5 days of Time Credits for every 30 days of successful participation......" under the Act. Vesting me with a total of 15 days for every 30 days of programming.

(4.3)   I have successfully participating in The Act's authorized Evidence-Based Recidivism Reduction Programming and· Productive Activities since the date of enactment Dec 21, 2018.  I will have programmed for 458 days and, pursuant to The Act's grant of a right to earn dimunition credits that reduce my time in captivity by programming, I will have earned 228 days of The Act's grant of time credits (458 divided by 30 = 15.26 times 15 days= 228 days) 15 days for every 30 days of programming

(5)  Under The Act, application of time credits must go towards release from prison captivity, to wit: to Supervised Release; namely:

( 5.1)  §3632(d)(4)(C). Time credits earned under this paragraph by prisoners who successfully participate in Evidence-Based Recidivism Reduction Programming or Productive Activities shall be applied towards time in Prerelease Custody or Supervised Release .

(5.2) Accordingly, by The Act, my vested earned time credits from continuing Evidence -Based Recidivism Reduction Programming and Productive Activities through 6-31-20, will have Vested me 228 Days of earned time credits equal to 7 months and 18 days off my incarceration and Home Confinement, and release me to Probation and Supervised Release is thereby mandatory.

(5.3) And further, The Act requires "Sec. 102 §3621(g)(3). If the Sentencing Court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of Supervised Release after imprisonment the Director of the Bureau of ' Prisons may transfer the prisoner to begin any such term of Supervised Release at an earlier date .... " based on the application of time credits under Section 3632."

(5.4) under application of The Act, makes transfer to Probation and Supervised Release the highest application of earned time credits. This application is my due process protected liberty interest in rights granted by the federal law evidenced by The Act.

(5 .5) "§3632(d) (6). In addition, the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible. ( i.e. CARES Act and Elderly Offender status )

(6)   The Act establishes the unambiguous time table for FBOP actions:

(6 .1) Section 102 of The Act states :

 Implementation of System and Recommendations by the Bureau of Prisons. " §3631(h)(1). Not later than 180 days after the Attorney General completes and releases the Risk and Needs Assessment System [January 15, 2020] the Director of the Bureau of Prisons shall…. (B) begin to expand the effective Evidenced-Based Recidivism Reduction Programming or Productive Activities it offers …..necessary to effectively implement the "System"

(6 .2) The Act made clear that the January 15, 2020, date is when the "System" must be implemented. The effective date of The Act was even earlier than the January 15, 2020  date, namely: July 19, 2019. The statute also made clear that the Date of Enactment ( when inmates could begin earning Time Credits was December 21, 2018 ) And this fact is clear and unambiguous in The Act : "Sec. 102· §3631(b)(2). The Amendment made by this Subsection shall take effect beginning on the date that the Attorney General completes and releases the Risk and Needs Assessment System [July 19, 2019] under Subchapter D of Chapter 229 of Title 18, United States Code, as added by Section 101(a) of this Act.

(6 .3) To further support the aforementioned date of January 15, 2020, as the mandatory implementation date for the earned time credits, a memo- dated- January 15, 2020, purporting to be from the "Office of Public Affairs, 11 states:

https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act

"Today is another milestone. in implementing the First Step Act,"· said Attorney General William P. Barr. · · " Beginning today, inmates will have even greater incentive to participate in Evidence-Based Programs that prepare them for productive lives after incarceration. This is what Congress intended with this bipartisan bill." "As of January 15, 2020, inmates will be assigned to participate in Evidence-Based Recidivism Reduction Programs and Productive Activities based on an initial needs assessment conducted by the BOP. Participation and completion of those assigned programs and activities can lead to placement in Prerelease Custody or a 12-month sentence reduction under the First Step Act." ••• "In the interim, inmates will continue to be assigned to programs and activities based on their risk and needs and if eligible, will receive credit upon completion."

(6.4) My eligibility was established and confirmed by Case Manager Ms. Mitchell' s handwritten assessment determination, "FSA Eligible."

(7.1) WHEREFORE, as my qualification for and participation in FBOP programing and educational activities particularly designated and assigned me to obtain diminution credits by Case Manager Ms. Mitchell herself and calculated under the First State Act . . resulting in actual early release from incarceration of federal inmates; named Immediate Custodian's herein refusal to calculate my credits, unlawfully restrains me of my personal federal civil right of liberty under the 14th and 15th

Amendments due process and equal protection guarantee of the Federal Constitution for my release date of July 20, 2021 instead of my projected release date of March 4, 2022.

(8) There is already a precedent to this awarding of my First Step Act Time Credits:

Goodman v. Ortiz (1:20-cv-07582)

On August 25, 2020 United States District Judge Renee Marie Bumb

" III. CONCLUSION The BOP's position that a prisoner can complete the PATTERN program before January 15, 2022 with no benefit to the prisoner is contrary to the statutory language, not to mention the unfairness of such a result. Therefore, the Court concludes that Petitioner is entitled to habeas relief. The Court will direct the BOP to immediately apply Petitioner's Earned Time credit of 120 days in an accompanying Order."

The entire Order and opinion can be read at
https://www.courtlistener.com/recap/gov.uscourts.njd.437697/gov.uscourts.njd.437697.12.0.pdf


Respectfully

Douglas A. Dyer

#52293-074

DATE REVIEWED: _12-3-19_

INSTITUTION: LEX_____ UNIT: CSW Y1_____

INMATE NAME: DYER, DOUGLAS_____ REG NO: 52293-074_____

FIRST STEP ACT (Circle One):     ELIGIBLE  /    INELIGIBLE

RECIDIVISM RISK LEVEL (Circle One):     MINIMUM   LOW   MEDIUM     HIGH

11/6/19

Ms. Mitchell

This certificate of completion for the 16-week BOP Threshold Program that I finished Oct. 28, 2019 was <u>NOT</u> on my "Individualized Reentry Plan - Program Review" under Education Classes or Programs. Can you please make sure it is counted and listed on my Program Review and on Sentry.

Thank you

Doug Dyer - 52293-074

Dyer your team was prepared on the 25th of Oct. It showed that you were a participant. On you next team *it will show* as completing on Oct. 28, 2019. Here is a copy of the certificate. I will put the original in file.
SM Mitchell

# Federal Medical Center

## Education Department

Lexington  Kentucky

This Certifies That

# Douglas Dyer

Has completed the 5 Hour Course of Study prescribed by the Federal Bureau of Prisons

**AARP 50+ FOUNDATION FINANCES**

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

2-27-20

_____
Coordinator

# Graduation Certificate

## awarded to:
## Douglas Dyer

## Completion of Federal Bureau of Prisons Program
# Threshold



October 28, 2019

**Date**

C. B. Ortiz

**Chaplain**

# CERTIFICATE OF COMPLETION
# A MATTER OF BALANCE

AWARDED TO

# Douglas Dyer

12 Sentry hours

Awarded this 30 of January, 2020

*Christina Eaker*

CDR Christina Eaker, OTR/L, MPH

# Federal Medical Center

## Education Department

Lexington  Kentucky

## This Certifies That

# Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

### COLD WAR

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

_____ 4/12/19
Ace Coordinator

_____
Supervisor of Education

# Federal Medical Center

### Education Department

Lexington  Kentucky

### This Certifies That

# Douglas Dyer

Has completed the Course of Study prescribed by the Federal Bureau of Prisons

**AARP FINANCES**

And is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

May 10, 2018

_____

Re-Entry Coordinator

# Federal Medical Center

## Education Department

Lexington  Kentucky

## This Certifies That

# Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

## WORLD WAR 2

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

_____  4/12/19
Ace Coordinator

_____
Supervisor of Education

# Federal Medical Center

## Education Department

### Lexington  Kentucky

This Certifies That

# Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

## THE U.S. CONSTITUTION

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

_____  11/4/19

Ace Coordinator

_____

Supervisor of Education

# Federal Medical Center

## Education Department

Lexington  Kentucky

## This Certifies That

# Douglas Dyer

Has completed the Course of Study prescribed by the Federal Bureau of Prisons

**FINANCIAL PEACE UNIVERSITY**

And is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

August 14, 2018

_(signature)_

Re-Entry Coordinator

# Certificate of Completion

### Presented to

### DOUGLAS DYER

### For successfully completing the

### Drug Abuse Education Course

*The Drug Abuse Education Course is a minimum of 12 hours. The goal of this program is to help the offender to make an accurate evaluation of the consequences of his/her alcohol/drug use and consider the need for treatment.*

12-21-2018

Ms. Reis, DTS    12/21/2018
FMC Lexington    Institution

# Federal Medical Center

## Education Department

Lexington  Kentucky

This Certifies That

# Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

**COMMERCIAL REAL ESTATE 2**

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

2/18/19

_____
Ace Coordinator

_____
Supervisor of Education

# Federal Medical Center

### Education Department

Lexington  Kentucky

## This Certifies That

# Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

**STOCK MARKET TRADING**

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

_____  4/22/19

Ace Coordinator

_____

Supervisor of Education

# Certificate of Completion

### This is to certify that:

## *Douglas Dyer*

### Has successfully completed the



## *Resume Writing & Interview Skills*

### Requiring __20__ hours of Training

### In Witness Thereof the Undersigned

### Given this __16th__ day of __April__, two thousand __19__

_____

# Certificate of Completion

This certificate is awarded to:

*D. Dyer*

For participating in the

Health and Nutrition Class (1 hour) at FMC Lexington

November 6, 2019

Signed: T. Pearson, Rec. Spec.

November 2019

123Certificates

# Federal Medical Center



### Education Department

### Lexington  Kentucky

This Certifies That

# Douglas Dyer

Has completed the 8 Hour Course of Study prescribed by the Federal Bureau of Prisons

**MONEY SMART**

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

_____

Ace Coordinator

5/22/19

# Federal Medical Center

## Education Department

Lexington  Kentucky

### This Certifies That

# Douglas Dyer

Has completed the 16 Hour Course of Study prescribed by the Federal Bureau of Prisons

**US PRESIDENTS**

and is therefore entitled to this

## Certificate of Program Completion

Given at FMC Lexington, Kentucky

_____ 4/17/19

Ace Coordinator



ASQ

Excellence Through Quality

Douglas A. Dyer

Certified Quality Improvement Associate

| Certificate Number | Date Issued |
|---|---|
| 14827 | 2/21/2020 |

July 6, 2020

65854051
Douglas A. Dyer
179 Callaway Ct
Chattanooga, TN 37421-0608

Dear Douglas A. Dyer:

CONGRATULATIONS! The Certification Council is pleased to announce that you have passed the written examination for the ASQ Certified Quality Improvement Associate Certification. You have reached an important milestone in your professional development.

Certification is not a license. It is peer recognition of proficiency in the prescribed body of knowledge. Please refer to your certification in terms which are consistent with the legal requirements and use of certification in the location in which you reside. We recommend that you refer to yourself as an "ASQ Certified Quality Improvement Associate." It is very important that you associate the Society with your certification.

Enclosed is your certificate and ASQ Code of Ethics. As a certified individual, the ASQ Code of Ethics should serve as your professional guide. Please review this information and call ASQ Headquarters if there are any discrepancies.

You can be rightfully proud of your certification as recognition of your professional knowledge by your peers in a professional society.

We look forward to your continued participation in the Society.

Sincerely,

Alan M. Bell, Chair
ASQ Certification Council



# American Society for Quality

## Douglas A. Dyer

*has satisfactorily fulfilled the requirements established*
*by the Society for professional attainment in*

## Quality Improvement

*and is, therefore, certified by the Society as a*

## Certified Quality Improvement Associate

| | |
|---|---|
| Certification Number | 14827 |
| Certification Date | 2/21/2020 |



_____
Chair, Certification Board

_____
Chair

Douglas Dyer
179 Callaway Ct.
Chattanooga, Tn. 37421



Hand delivered to
lobby BJL

X-RAYED

X-RAYED

United States District Court
Court Clerk
900 Georgia Ave
Room 309
Chattanooga, Tn. 37402